IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Kindra Simon Johnson, | Civil Action No.: 3:15-cv-04807-JMC |
| Plaintiff, | |
| v. | |
| | **ORDER AND OPINION** |
| Lexington County School District Two, | |
| Defendant. | |

Plaintiff Kindra Simon Johnson filed this action against her former employer, Defendant Lexington County School District Two alleging that she was subjected to (1) retaliation for engaging in protected activity, (2) a hostile work environment because of her race and (3) discrimination because of her race and disability, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213.[1] (ECF No. 1 at 14 ¶ 76–17 ¶ 95.)

---

[1] In considering the claims alleging violation of Title VII and/or the ADA, the court is unable to locate evidence in the record regarding the exhaustion of administrative remedies to support the exercise of jurisdiction. Prior to pursuing an action in federal district court under the ADA or Title VII, a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC (or a state deferral agency). *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 n.3 (4th Cir. 1999); *see also* 42 U.S.C. §§ 2000e–5(e)(1), 5(f)(1). A plaintiff's failure to file such a charge and exhaust her administrative remedies deprives federal courts of subject matter jurisdiction over her Title VII/ADA claims. *Jones*, 551 F.3d at 300; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (Subject matter jurisdiction is "the courts' statutory or constitutional power to adjudicate the case."). Because there is no evidence that Plaintiff filed a Title VII and/or ADA charge of discrimination as required, the court sua sponte dismisses these causes of action from the Complaint. Accordingly, the court **DECLINES TO ADOPT** the Report and Recommendation (ECF No. 57) as to Plaintiff's Title VII and ADA claims and **DENIES AS MOOT** Defendant's Motion for Summary Judgment as to these claims. (ECF No. 42.) The court's determination does not affect Plaintiff's section 1983 race discrimination claim because "Title VII does not preempt an action under § 1983 which is based on an alleged violation of the fourteenth amendment." *Keller v. Prince George's Cty.*, 827 F.2d 952, 962–63 (4th Cir. 1987) (citations omitted). The remainder of this Order will focus entirely on the section 1983 claim for race discrimination.

Additionally, Plaintiff alleges a claim that her termination occurred because of race discrimination in violation of 42 U.S.C. § 1983. (ECF No. 1 at 17 ¶ 96–18 ¶ 105.)

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 42.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Kaymani D. West for pretrial handling. On January 12, 2018, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's Motion for Summary Judgment as Plaintiff's section 1983 race discrimination claim. (ECF No. 57 at 44.) Plaintiff filed objections to the Magistrate Judge's Report and Recommendation, which are presently before the court. (ECF No. 61.) For the reasons set forth below, the court **ACCEPTS IN PART** the Magistrate Judge's recommendation and **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's section 1983 race discrimination claim.

## I. RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (*See* ECF No. 57.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of her claims.

Defendant is "one of five districts in Lexington County [South Carolina] and is governed by a seven member Board of Trustees elected by the voters of the District" and "encompasses a land area of 92 square miles" to include "Lexington County's largest municipalities, the cities of West Columbia and Cayce." Lexington Cty. Sch. Dist. Two, https://www.google.com/url?sa=

t&rct=j&q=&esrc=s&source=web&cd=8&cad=rja&uact=8&ved=0ahUKEwjnk_bFioHaAhVX42MKHcWnCJUQFghEMAc&url=http%3A%2F%2Fwww.govwiki.info%2Fpdfs%2FSchool%2520District%2FSC%2520Lexington%2520County%2520School%2520District%2520Two%25202016.pdf&usg=AOvVaw0_giqTSXo2gNiIYRC6L0jB (last visited Mar. 22, 2018). Plaintiff is a black woman who Defendant hired in December 2009 as a Coordinator of Title I and Academic Assistance and a teacher for the English for Speakers of Other Languages ("ESOL") program. (ECF 47-1 at 6:34:12–23 & 6:35:25–36:9.) At all relevant times, Plaintiff's immediate supervisor was Debbie Gunter, the Director of Title I and a white woman. (ECF No. 1-1 at 2 ¶ 5; ECF No. 47-1 at 36:153:9–10 & 37:160:16–17.)

Throughout her employment with Defendant, Plaintiff asserts that her race negatively affected her job in the following particulars:

> Okay. There -- there's all white school board, and there's never been – there's never been a white – a black superintendent at all. Only one black school board member in the history of the district. Therefore, I had -- I had -- we had this -- I had this fear that -- that my race would -- would be a factor on -- on the job. My boss [Gunter] did not treat me the same as the white -- other white employee whom she supervised. For example: When I had the foot surgery, I was out of work for six whole weeks. I returned to work on crutches. I -- I was teaching at two schools and working at the district office, doing both jobs, and she did not ask me how I -- how I was feeling, if I needed help. She didn't even offer to help me carry materials. The white employee who she supervised [Janet Renahan] was out for one day -- just one day versus me, comparatively, six weeks. And when she returned to work, after being out for one day for a medical procedure, my boss asked her how she was feeling, how she was doing; she showed concern for her, but showed no concern at all for me.

(ECF No. 47-1 at 23:103:17–104:11.)

> The school board is an all-white school board, only one African-American in the history of the school board. There's never been a black superintendent. They've all been white. I was one of the very few blacks at the district level. And the program that I work with – the ESOL program, which consisted of mostly minority children, the board made decisions that the State Department actually had to intervene, because the decision they were making would violate some of the federal laws. And because I was the one who was working with that program, I felt direct discrimination 'cause --because I didn't receive the -- the support that I

should have received. And it was mainly minority children, as well as the teachers in the program who were also feeling like they were being targeted because they are African-American, or of color.

(ECF No. 47-1 at 39:166:12–167:2.)

> The school board -- the ESOL program is this program that I -- I worked with, and the school board had a history of discriminatory practices for the -- for the kids and the -- and the teachers in that program. For example, when the Somali Band Two students from Africa wanted to enroll in Lexington Two, they were denied enrollment. When I met with the school board and presented to the school board about the students, I was told they have some of the -- they have language problems. I don't -- I don't view that as a -- as a problem when that's their heritage language. But that's what I was told. Also, the school board had wanted the students to be separated from the general population for part of the school day until they -- until they learned English, and the State Department intervened and would not approve that. Also, the students who wanted to attend their zoned school in their neighborhood, the students who were not fluent in English, they were not allowed -- allowed to enroll unless they signed a waiver to waive their rights for English support. That -- those are all violations. They -- they were bused to another school. They were -- the school where they wanted to enroll was not in Title 1. The school they were bused to was a high poverty school, which is a Title 1 school, and it was not where they were zoned to -- to attend school. So with the school board having that type of attitude towards the program, and I'm the one -- I am one of the people who advocated so strongly for those children, and did not agree with those decisions, and made it known that I did not agree, I had to blow the whistle on a lot of those practices and -- and reported it to the State Department when we had audits in the -- in -- in the – and then the district received -- the superintendent would receive a letter, different letters from the State Department saying, "This is not allowed," various letters. But the school -- but that attitude the school board had, I did not feel like they were going to support that one -- the one -- one of the people who was advocating so strongly for -- for students that they already had demonstrated that they were not treating them equally to other students. And with them being a[n] all white school board and -- and only having one black school board member in the history of that district, I did not feel like I was going to get a fair chance at all.

(ECF No. 47-1 at 47:197:1–198:21.)

On February 12, 2015, Dr. Angela Cooper, Defendant's Chief Human Resources Officer, was provided with a text message exchange that included Plaintiff. (ECF No. 42-3 at 1 ¶¶ 1, 5 & 2 ¶ 6.) Upon review of the text messages sent by Plaintiff (*see* ECF No. 42-6), Dr. Cooper concluded that she would need to make a recommendation regarding the discipline Plaintiff

should receive to Defendant's Superintendent. (*Id.* at 2 ¶¶ 8, 9.) On February 25, 2015, Defendant placed Plaintiff on administrative leave "pending an investigation of inappropriate text messages sent to another employee and for interference and misrepresentation of school operations." (ECF No. 47-1 at 44:187:24–188:2; ECF No. 47-23.) On March 23, 2015, Plaintiff was informed that Defendant's Superintendent would be recommending Plaintiff's termination to Defendant's Board. (ECF No. 47-22.) On March 31, 2015, Defendant's Board accepted the Superintendent's recommendation regarding Plaintiff's termination "for violation of policies IJNDB[2] (Use of Technology) and GBEB[3] (Staff Conduct)." (ECF No. 47-23.) Defendant's

---

[2] IJNDB is Defendant's "Technology Resources" usage policy and provides in pertinent part:

> Internet access is coordinated through a complex association of government agencies and regional and state networks. In addition, the smooth operation of the network relies upon the proper conduct of the end users who must adhere to strict guidelines. These guidelines are provided so the user is aware of the responsibilities he/she must assume. In general, this requires efficient, ethical, and legal utilization of the network resources. If a Lexington County School District Two user violates any of these provisions, his/her access will be terminated and future access could be denied.

(ECF No. 47-27 at 6.)

[3] GBEB defines the "Conduct of All Employees" and provides as follows:

> The Board reaffirms one of the oldest beliefs in education, which is "One of the best methods of instruction is that of setting a good example." The Board expects the staff of the District to strive to set the kind of example for students that will serve them well in their own conduct and behavior and subsequently contribute to an appropriate school atmosphere. To that end, in dress, conduct and interpersonal relationships, all staff should recognize that they are being continuously observed by students and that their actions and demeanor will be reflected in the conduct of the students. The personal life of an employee will be the concern of and warrant the attention of the Board only as it may directly prevent the employee from effectively performing assigned functions during duty hours or as it violates local, state or federal law or contractual agreements. No employee will commit or attempt to induce students or others to commit an act or acts of immoral conduct which may be harmful to others or bring discredit to the District. If it appears an employee may have violated the law, the District will cooperate with law enforcement agencies. Employees of the District, while on duty and in the presence of students, will not use profanity, will not use tobacco in

termination of Plaintiff took effect on April 1, 2015. (ECF No. 47-1 at 6:35:19–20.)

As a result of the aforementioned, Plaintiff filed an action on October 27, 2015, in the Court of Common Pleas for Lexington County (South Carolina) alleging claims for (1) hostile work environment and discrimination on account of race (Counts 1 and 4), retaliation (Count 2) and disability discrimination (Count 3). (ECF No. 1-1 at 14–18.) After removing the matter to this court on December 2, 2015 (ECF No. 1), Defendant answered the Complaint on December 4, 2015, denying its allegations. (ECF No. 5.) On April 12, 2017, Defendant filed its Motion for Summary Judgment. (ECF No. 42.) Plaintiff filed opposition to the Motion for Summary Judgment on May 17, 2017, to which Defendant filed a Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment on May 24, 2017. (ECF Nos. 47, 48.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report and Recommendation on January 12, 2018, recommending that Defendant's Motion for Summary Judgment be granted as to all Plaintiff's claims. (ECF No. 57.) On February 9, 2018, Plaintiff filed objections to the Report and Recommendation. (ECF No. 61.)

## II. JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on Plaintiff's claim against Defendant under 42 U.S.C. § 1983, which permits an injured party to

---

> any form, and will not consume or be under the influence of intoxicating beverages. Employees will not be involved in drug abuse of drug traffic. If an employee is arrested for any offense, it must be reported to their supervisor within 24 hours of the occurrence. Violations of this policy by employees will be grounds for immediate suspension and possible termination of employment. In such cases, an employee will be informed by his/her right to any hearing or due process procedure that may be applicable under law or district policy.

(ECF No. 47-27 at 5.)

bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." *Id.*

### III. LEGAL STANDARD

A. <u>The Magistrate Judge's Report and Recommendation</u>

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

B. <u>Summary Judgment Generally</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In

ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

A. <u>The Report and Recommendation</u>

In the Report and Recommendation, the Magistrate Judge analyzed Plaintiff's section 1983 race discrimination claim regarding her termination "in tandem with the Title VII race discrimination claim." (ECF No. 57 at 21 (citing *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (noting Title VII and § 1983 employment claims based on circumstantial evidence both use the *McDonnell Douglas* burden-shifting test)).) Upon her review, the Magistrate Judge determined that Plaintiff's section 1983 race discrimination claim fails at the prima facie level because Plaintiff's evidence does not demonstrate that (1) she received "different treatment from similarly situated employees outside the protected class" or (2) "there is some evidence of discrimination in the case."[4] (ECF No. 57 at 21.) Accordingly, the Magistrate Judge

---

[4] Pursuant to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Magistrate Judge observed that a prima facie case of discrimination requires "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." (ECF No. 57 at 20–21 (quoting *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015)).) Plaintiff asserts that the appropriate elements of a prima facie case of

8

recommended granting Defendant's Motion for Summary Judgment on Plaintiff's section 1983 claim of race discrimination. (*Id.* at 24.)

B.   Plaintiff's Objections

In her objections to the Report and Recommendation, Plaintiff asserts that the Magistrate Judge erred by not either considering the evidence she submitted regarding comparators/similarly situated employees or finding "that [Janet] Renahan is a comparator." (ECF No. 61 at 16.) More specifically, Plaintiff argues that the Magistrate Judge failed to consider the following:

> However, Renahan is a white employee who was supervised by the same supervisor, Gunter. Furthermore, Plaintiff alleged that Renahan was given more favorable treatment by Gunter. Plaintiff testified in her deposition that Gunter asked if Renahan needed any assistance after she missed just one day for a medical procedure. *Id.* at 104-9. Comparatively, Plaintiff came back on crutches after missing six weeks for foot surgery. *Id.* at 104-7, 8. However, Gunter did not acknowledge Plaintiff's absence, or ask if Plaintiff required assistance based upon the crutches. *Id.* at 104-22, 23. The R&R gave little to no credence that Plaintiff's testified that she had expressed perceived discrimination from Gunter "on so many occasions" and that Heyward-Evans confirmed that Plaintiff's reports did indeed occur. Dkt. 47-2, p. 43 l. 2 – p. 45 l. 21.

(*Id.*) Based on consideration of the foregoing, Plaintiff contends that the court should reject the Report and Recommendation and deny Defendant's Motion for Summary Judgment on the section 1983 race discrimination claim.

C.   The Court's Review

In this matter, Plaintiff argues that her termination occurred as a result of race discrimination in violation of 42 U.S.C. § 1983. In support of this argument, Plaintiff asserts that it was Defendant's custom/policy "to treat the ESOL program, its students, teachers, and

---

discrimination are "(1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse action; (4) there is some evidence of discrimination in the case." (ECF No. 47 at 17 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).)

coordinators as inferior to the rest of Defendant's faculty and students" and to generally treat "minorities worse than the other its white employees and students." (ECF No. 47 at 32.)

"Title 42 U.S.C. § 1983 is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute."[5] *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001)). "To state a prima facie case of race discrimination under section 1983, a plaintiff must establish the same elements as required by a disparate treatment claim under Title VII." *Cherry v. City of Greensboro*, No. 12-cv-217, 2013 WL 422857, at *5 (M.D.N.C. Feb. 4, 2013) (citing *Abel v. Dubberly*, 210 F.3d 1334, 1338 (11th Cir. 2000) (which cited *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995), recognizing that Title VII and section 1983 claims have the same elements when the claims are based on the same set of facts)).); *see also Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("Love–Lane asserts her discrimination claims under three federal statutes, Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 . . . and the elements required to establish such a case are the same under all three statutes."). As a result, absent direct evidence, the elements of a prima facie case of race

---

[5] "To establish municipal liability under section 1983, a plaintiff must demonstrate more than respondeat superior liability." *Cherry*, 2013 WL 422857, at *6 (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 693 n.7 (1978)). "A plaintiff must show (1) an official policy or custom (2) that is fairly attributable to the municipality (3) that proximately caused the deprivation of a constitutional right." *Id.* (citing *Pettiford v. City of Greensboro*, 556 F. Supp.2d 512, 530 (M.D.N.C. 2008)). "Additionally, the plaintiff must show that the officials or employees at issue had policymaking authority such that their acts constitute municipal policy." *Id.* (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

discrimination under section 1983 are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

Upon review, the court is persuaded that Plaintiff's evidence demonstrates that she is a member of a protected class and that her termination was an adverse action. However, the court is unable to conclude that Plaintiff's evidence demonstrates that she was treated differently from "similarly situated employees outside the protected class" or discriminated against because there is no evidence that another employee engaged in similar conduct as Plaintiff and avoided discipline or was disciplined less severely. Although Plaintiff references another employee (*i.e.*, Janet Renahan) whom Defendant allegedly treated differently,[6] Plaintiff fails to identify any

---

[6] Plaintiff testified as follows regarding the different treatment Renahan received:

Q. Do you contend that Ms. Renahan was -- or that you were treated differently by the district on the basis of race than Ms. Renahan?
A. Yes.
Q. How so?
A. My boss, Debbie Gunter, supervised both of us. She met with Ms. Renahan to go over performance evaluations, but she would not annually go over my performance evaluation. It's a professional growth and development plan -- she -- she did some years; but some other years, she did not. I remember in 2015, if I recall correctly that --the date -- it was the last year I worked there, I e-mailed her and telling her that I -- my professional growth and 1 development plan was ready to be -- to review. And typically you have a -- have a meeting and you talk about your goals, you talk about how you plan to meet those goals, or where you are with meeting those goals. She never met with me, even though she knew that was -- that's the procedure. And even though her boss met with her, she did not do the same. And -- and that is a procedure that --that you meet with your superiors for annually -- at least annually to go over your goals. But she did not. But she did do that for Ms. Renahan. And when I had the foot surgery, I was out of work for six weeks. When I returned to work, I was on crutches. I still was teaching at -- at school – two schools, as well as performing the district office job, the duties. And my boss did not offer to help me catch up. She didn't offer assistance. She didn't even ask me how I was doing. Ms. Renahan, on the other hand, was out for one day compared to my six weeks. Ms. Renahan was out for one day. And

11

similarly situated white employee that engaged in the same conduct as Plaintiff (*i.e.*, violation of IJNDB (Use of Technology) and GBEB (Staff Conduct)), without mitigating circumstances, who was treated differently by Defendant. "Moreover, even if such a specific white comparator had been identified, [Plaintiff] fails to offer any evidence as to whether such an individual would be similarly situated to [her] so as to permit a valid comparison." *Fludd v. Richland Cty. EMS*, C/A No. 3:13-2635-MBS, 2015 WL 631140, at *6 (D.S.C. Feb. 13, 2015) (citing *Causey v. Balog*, 162 F.3d 795, 801–02 (4th Cir. 1998) (holding that where race- and age-based animosity could be shown through differential treatment of similarly situated employees, plaintiff's conclusory statements that his employer "treated him less favorably than younger black and white employees of similar rank," "without specific evidentiary support, cannot support an actionable claim"); *Corley v. La. ex rel. Div. of Admin., Office of Risk Mgmt.*, 816 F. Supp. 2d 297, 316 (M.D. La. 2011) ("In the context of a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated.") (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009))). In this regard, the court agrees with the Magistrate Judge's finding that Plaintiff cannot

---

> when she returned to work, my boss asked her how she was feeling, how she was doing. She offered her support and -- but did not offer that to me.
> Q. Anything else that you contend you and Ms. Renahan were treated differently on the basis of race, or 1 that you were discriminated against on the basis of race?
> A. As -- as -- as it relate to Janet Renahan?
> Q. Yes.
> A. I can't recall anything else at this moment about -- as far as it relates to Janet Renahan as -- other than her, my boss -- I -- I already mentioned that, supporting her and not -- and not providing the support for me when I had a medical procedure as well.

(ECF No. 47-1 at 34:145:12–147:8.)

demonstrate a prima facie case of race discrimination under section 1983. Accordingly, Defendant is entitled to summary judgment on Plaintiff's section 1983 race discrimination claim.

## V.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the Motion for Summary Judgment of Defendant Lexington County School District Two as to Plaintiff's claim for race discrimination in violation of 42 U.S.C. § 1983. (ECF No. 42.) The court **ACCEPTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 57) and incorporates it herein by reference. However, as observed in footnote 1, the court **DISMISSES** Plaintiff's claims pursuant to Title VII and the ADA **WITHOUT PREJUDICE**, **DECLINES TO ADOPT** the Report and Recommendation (ECF No. 57) as to Plaintiff's Title VII and ADA claims and **DENIES AS MOOT** Defendant's Motion for Summary Judgment as to these claims. (ECF No. 42.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 26, 2018
Columbia, South Carolina